**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION**

**CHRISTOPHER MORRIS**                                                    **PETITIONER**

**v.**                                        **CIVIL ACTION NO.: 3:22-cv-280-TSL-MTP**

**BURL CAIN**                                                              **RESPONDENT**

## REPORT AND RECOMMENDATION

BEFORE THE COURT is a Petition for Writ of Habeas Corpus [1] pursuant to 28 U.S.C. § 2254[1] filed by Christopher Morris. Having considered the submissions of the parties and the applicable law, the undersigned recommends that the Petition [1] be denied.

## FACTS AND PROCEDURAL HISTORY

In the instant Petition [1], Morris alleges various violations of his constitutional rights during trial and on appeal. The Court of Appeals of Mississippi summarized the facts underlying Morris's convictions for murder, shooting into a dwelling, and aggravated assault as follows:

> On September 4, 2013, sometime between 10 and 11 p.m., Crystal King and Manuel Torres were sitting on King's front porch in Meridian. King testified that Morris pulled up in front of her house in a dark colored truck or SUV and said that he needed to talk to Torres. Morris and Torres argued for five to ten minutes. Morris then left, but King saw him drive around the block a few times.
>
> King testified that Morris eventually returned and parked across the street. He got out of his vehicle and called for Torres to come to him. Torres walked over to Morris, and the two men began arguing again. Morris then yelled out for King to come to the street, but she told the two men that she was not getting involved.

---

[1] Though his Petition was filed pursuant to 28 U.S.C. § 2241, the undersigned has construed his Petition as one arising pursuant to a 28 U.S.C. § 2254, as Morris is "in custody pursuant to the judgment of a State court." 28 U.S.C. § 2254. Petitioner did not file a supporting memorandum brief, nor did he file a brief in reply to the State's response. His positions are essentially unsupported by any submitted legal authority or arguments. As noted below, his petition refers to grounds raised on appeal and his petition for post-conviction relief; however, as the standard of review at this stage is different than applied in those proceedings, prior filings in state court provide little guidance in addressing the current petition.

Morris told her that was the "wrong answer" and that she had "ten seconds." Morris then pulled out a gun and started shooting. He shot Torres, and Torres ran back toward King's house. King yelled at Torres not to come her way, so he turned and ran toward a funeral home directly across the street from King's house. Morris followed Torres. King heard Morris fire a few more shots, and Torres fell in some tall grass near the funeral home. Morris fired still more shots.

Morris then walked back in the direction of King's house and began shooting at it. King lay on the front porch, hoping not to get shot. King's boyfriend, Wilson Gates, was sleeping in a front room of the house when the gunfire woke him. King yelled to Gates for help, so he crawled outside. Morris shot seven or eight times into the house. Morris finally stopped shooting, walked back to his vehicle, and drove away. After Morris left, King noticed that Gates's back was bleeding. He had a small graze wound on his back, but he did not realize that he had been shot. When paramedics arrived, they looked at the wound, but Gates refused further treatment.

When law enforcement officers arrived, they followed a trail of blood from the street to where Torres lay in front of the funeral home. Torres was bleeding heavily from his leg and having difficulty breathing. Meridian Police Officer Eric Shirley asked Torres who shot him, and, according to Shirley, Torres said, "It's Bo. Bo's the one that shot me." Shirley tried to get more information from Torres, but Torres could only tell him "Bo" and that "Bo" drove a Caprice. Shirley was with Torres for five to ten minutes before the ambulance arrived. Shirley turned the information about "Bo" over to detectives and had no further involvement in the investigation.

Meridian Police Officer Kevin Boyd photographed and documented the blood trail, and Officer Rusty Powell recovered some shell casings found in the area after Boyd photographed them. They found shell casings in front of the funeral home, in the grass where Torres was found, and in the street in front of King's house. Most of the casings were within forty or fifty yards of where Torres was found. All casings recovered were from a 7.62-caliber Winchester gun, which Boyd testified was likely a rifle. No fingerprints were recovered from the casings. Boyd and Powell also photographed the exterior and interior of King's home, which had several bullet holes through the front wall and into the kitchen. Jars of food in the kitchen had been struck by the bullets and exploded on impact. A few projectiles were retrieved from the home as well.

Boyd and Powell asked King, Gates, and others associated with the case if they could identify "Bo." King and Gates would not speak with them the night of the shooting, but King later gave a statement to police. She did not know who "Bo" was, but she identified Morris as the shooter. Powell also ran an alias search for the area and persons known as "Bo," but it turned up nothing.

Torres was taken to a nearby hospital. Dr. Dru Denison testified that Torres had been shot in his right leg, nearly severing an artery in two, and had suffered significant blood loss. After Denison stopped the bleeding, he placed a shunt in Torres's leg to bypass the injured area. A blood clot later developed and blocked the shunt, which required additional surgery. Denison then created a bypass graft using a vein from Torres's left leg. That procedure was also unsuccessful, and Torres's leg had to be amputated. Denison testified that Torres was in the hospital for several days, possibly a week, before he died from his injuries. Testifying as an expert in general surgery, Denison opined that Torres died as a result of complications from his gunshot wound.

Dr. J. Brent Davis, a forensic pathologist, also testified that the cause of death was complications from the gunshot wound. Davis did not conduct a toxicology screen on Torres because Torres had been in the hospital for over a week prior to his death, and he did not believe a toxicology screen was necessary to determine the cause of death. Davis examined Torres's body but was unable to examine Torres's amputated leg.

*Morris v. State*, 303 So.3d 9, 13-15 (Miss. Ct. App. 2020). Morris did not testify or call any witnesses at trial. *Id*. at 15.

On July 27, 2016, a jury convicted Morris of murder, shooting into a dwelling, and aggravated assault in the Circuit Court of Lauderdale County. ([7-6] at 40-41). The trial court sentenced Morris to life imprisonment for murder, ten years for shooting into a dwelling, and ten years for aggravated assault. The ten-year sentences are to run concurrently with one another but consecutively to the life sentence. ([6-1] at 1-3).

Thereafter, Morris, through counsel, appealed his convictions to the Mississippi Supreme Court, raising the following grounds for relief:

1. Whether the trial court erred in finding sufficiency of the evidence in the conviction of Christopher Morris

2. Does the weight of [the] evidence support convictions for murder, aggravated assault, shooting into dwelling house against Christopher Morris?

3. Did the court err by denying [jury] instruction D-6?

4.   Whether appellant was denied a fair and impartial trial

5.   Whether appellant's right to [a] speedy trial was violated

([7-12] at 1-22); *see also Morris*, 303 So.3d at 15-16. The Supreme Court of Mississippi referred the case to the Mississippi Court of Appeals, and on January 14, 2020, it affirmed Morris's convictions in a written opinion. *See Morris*, 303 So.3d 9. The Mandate issued on October 15, 2020. ([7-14] at 2).

On December 22, 2021, through counsel, Morris filed an "Application for Leave to File Complaint for Post-Conviction Collateral Relief in the Circuit Court of Lauderdale County, Mississippi" and a "Complaint for Post-Conviction Collateral Relief" in the Supreme Court of Mississippi accompanied by a 10-page handwritten statement of facts and additional claims for relief ("PCR Motion"). ([7-15] at 6-40).  On June 27, 2022, the Supreme Court of Mississippi denied his PCR Motion. ([6-3]).

On May 26, 2022, Morris again through counsel, filed the instant federal habeas Petition [1]. Morris did not specifically list the grounds for relief but stated "…please consider each and every ground raised in Direct App[e]al and the State Petition for Post-Conviction Relief, as stated above." ([1] at 7-8). The undersigned could recommend a denial of Morris's petition on the basis of waiver for his failure to brief the grounds adequately (or at all). *See Lookingbill v. Cockrell*, 293 F.3d 256, 263 (5th Cir. 2002) ("Where a habeas petitioner fails to brief an argument adequately, we consider it waived."); *Pea v. Cain*, 2017 WL 1197872, *12 (M. D. La. 2017) (collecting district court decisions that found waiver where a habeas claim was not adequately briefed). However, after a thorough review of the record, the undersigned has liberally construed Morris's federal claims for relief and has addressed them herein as follows:

Ground One:            Insufficient evidence to support convictions

Ground Two:        Jury's verdict against the weight of the evidence

Ground Three:      Trial Judge erred by denying circumstantial evidence instruction

Ground Four:       Cumulative effect of errors deprived Morris of a fair trial:
  a. Discovery violations regarding the witness list, medical records, expert witness's resume
  b. Prosecutorial misconduct during closing argument
  c. Transcript Issues
  d. Proposed jury instructions for testimony of law enforcement officers

Ground Five:       Right to a speedy trial violated

Ground Six:        Trial court failed to properly instruct the jury by offering jury instructions C-7, C-9, C-10, C-11, and C-13

Ground Seven:      Ineffective assistance of trial counsel:
  a. Failure to cross-examine Dr. Dennison on his qualifications and other potential causes of death for the victim
  b. Failure to impeach King's identification of Morris as the shooter
  c. Failure to object to the "offending" jury instructions
  d. Failure to object to State's closing argument that commented on Morris's right to silence
  e. Failure to have jury instructed for manslaughter
  f. Failure to request a continuance following the State's late production of the medical records and autopsy photos
  g. Failure to obtain discovery in advance of trial
  h. Meeting with Morris only once
  i. Making the decision for Morris not to testify
  j. Failure to inquire why the State did not call the first detective on the scene to testify
  k. Failure to visit the crime scene
  l. "Poor" opening statement
  m. Failure to prepare for trial or conduct a personal investigation
  n. Failure to offer an alibi for Morris
  o. Requesting too many continuances

Ground Eight:      Ineffective assistance of appellate counsel:
  a. Failure to adequately argue Morris's speedy-trial claim
  b. Failure to raise issue of fair trial by jury
  c. Failure to raise issue of trial judge invading the deliberative process of the jury with statements of fact in the jury instructions

Ground Nine:          *Brady* violation related to the victim's cellphone

Ground Ten:           Morris should have been allowed to testify

Ground Eleven:        Prosecutorial misconduct for improper voir dire

On March 28, 2023, a Response [6] was filed. Morris did not file a reply brief and the time to do so has expired. This matter is now ripe for review.

## ANALYSIS

The standard of review for habeas claims to be applied by this Court is set forth in 28 U.S.C. § 2254(d), which provides that a federal court may not grant habeas relief unless the state court's adjudication of the claims "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). The "contrary to" and "unreasonable application" clauses of Section 2254(d)(1) have independent meanings. *Bell v. Cone*, 535 U.S. 685, 694 (2002).

The "contrary to" clause applies when the state court fails to apply a legal rule announced by the Supreme Court or reaches a result opposite to a previous decision of the Court on materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). The "unreasonable application" clause applies when the state court "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case." *Id*. at 407-08. The "unreasonable application" inquiry is based on an objective standard, and "unreasonable" does not equate with "incorrect." *Garcia v. Dretke*, 388 F.3d 496, 500 (5th Cir. 2004).

Habeas corpus serves as "a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." *Harrington v.*

*Richter*, 562 U.S. 86, 102-03 (2011) (internal quotations omitted). A federal court does not "sit as a 'super' state supreme court" and may decide the issues presented by the habeas petition "only to the extent that federal constitutional issues are implicated." *Smith v. McCotter*, 786 F.2d 697, 700 (5th Cir. 1986).

**Grounds Procedurally Barred**

Respondent argues that several of Morris's grounds for relief are procedurally barred from review by this Court including: a discovery violation related to the State's witness list (part of Ground Four), prosecutorial misconduct for misleading the jury during closing argument (part of Ground Four), a speedy-trial violation (Ground Five), and his challenge to jury instructions C-7, C-9, C-10, C-11, and C-13 (Ground Six). ([6] at 14-19).

Federal courts are precluded from reviewing a prisoner's habeas claim where the state court declined to address the claim for failure to meet a state procedural requirement. *Coleman v. Thompson*, 501 U.S. 722, 729-30 (1991). The Mississippi Court of Appeals found Morris's claims regarding the witness list and prosecutorial misconduct during closing argument were waived for failing to object or argue them during his trial. *See Morris*, 303 So. 3d at 19-20. The appellate court also found that Morris waived his speedy trial claim by failing to adequately brief the issue on direct appeal. *Id*. at 22. Additionally, Morris raised Ground Six, challenging jury instructions C-7, C-9, C-10, C-11, and C-13 for the first time on post-conviction review and the Supreme Court of Mississippi found that it was waived. ([6-3]).

A federal court "will not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment." *Coleman*, 501 U.S. at 729-30. To satisfy the "independent" and "adequate" requirements, the state court's dismissal must clearly and expressly reflect that it

rests on a state procedural bar, and the bar must be strictly or regularly applied by the state courts to the vast majority of similar claims. *Martin v. Maxey*, 98 F.3d 844, 847 (5th Cir. 1996).

A state has failed to strictly and regularly apply a procedural rule only when the state "clearly and unequivocally excuse[s] the procedural default," and when the state fails to apply the rule to claims "identical or similar" to the petitioner's claim. *Amos v. Scott*, 61 F.3d 333, 339 (5th Cir. 1995). Petitioner bears the burden of establishing that the State did not strictly or regularly follow a procedural bar. *Stokes v. Anderson*, 123 F.3d 858, 860 (5th Cir. 1997). Morris does not argue that Mississippi has not strictly or regularly applied the bar to similar claims, and the United States Court of Appeals for the Fifth Circuit has held that Mississippi's contemporaneous objection rule has been regularly and consistently applied. *See Smith v. Black*, 970 F.2d 1383, 1387 (5th Cir. 1992). Thus, Morris defaulted these claims in state court.

A federal court, however, may consider a defaulted claim under two narrow exceptions: cause and actual prejudice or miscarriage of justice. *Bagwell v. Dretke*, 372 F.3d 748, 755 (5th Cir. 2005). In order to demonstrate cause, "there must be something *external* to the petitioner, something that cannot fairly be attributed to him." *Coleman*, 501 U.S. at 753. Prejudice may be demonstrated by showing that the cause "worked to [the petitioner's] actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Murray v. Carrier*, 477 U.S. 478, 488 (1986).

Morris claims that his trial counsel was constitutionally ineffective for failing to object to the "offending" jury instructions, object to the State's closing argument that commented on Morris's right to silence, obtain discovery in advance of trial, and for requesting too many continuances. ([7-15] at 8, 18-20, 29). "A defendant may show 'cause' by proving ineffective assistance of counsel in violation of the Sixth Amendment of the Constitution." *Pickney v. Cain*,

8

337 F.3d 542, 545 (5th Cir. 2003). The United States Supreme Court has held that "the question of cause for a procedural default does not turn on whether counsel erred or on the kind of error counsel may have made. So long as a defendant is represented by counsel whose performance is not constitutionally ineffective under the standard established in *Strickland* ... we discern no inequity in requiring him to bear the risk of attorney error that results in a procedural default." *Murray v. Carrier*, 477 U.S. 479, 488 (1986).

However, as the undersigned will discuss *infra* in Ground Seven pp. 17-31, Morris's ineffective assistance of counsel claims fail to establish that the state court's decision was an unreasonable application of *Strickland*. Accordingly, Petitioner has not overcome the procedural bar, and relief related the State's witness list, prosecutorial misconduct for misleading the jury during closing argument, speedy-trial violation, and challenge to the jury instructions C-7, C-9, C-10, C-11, and C-13 should be denied as procedurally barred.

**Grounds One and Two: Sufficiency and Weight of the Evidence**

Morris argues that there was insufficient evidence to support any of his convictions. He argues that the state's main witness Crystal Monique King ("King") was the only person to identify him, that she stated that he had a handgun which conflicted with another witness's testimony that he had a shotgun, that it was dark, that the victim identified the shooter as "Bo", and that no evidence was presented that Morris was "Bo." Additionally, Morris argues that there was no basis for the aggravated assault conviction as he claims there was no testimony that Wilson Gates ("Gates"), the victim of the aggravated assault, had been hit by a bullet or that any of the bullets in the house had blood on them. Morris also claims that the casings and fragments were never matched to a gun and attacks the medical testimony at trial. ([7-12] at 17).

"An argument challenging the weight of the evidence, however, does not state a cognizable claim for federal habeas relief." *Sims v. Mississippi*, 2020 WL 121010, at *4 (S.D. Miss. Jan. 28, 2020) (citing *Young v. Kemp*, 760 F.2d 1097, 1105 (11th Cir. 1985) and *Jordan v. Epps*, 2012 WL 5997046 (S.D. Miss. Aug. 8, 2012)).  Unlike a sufficiency-of-the-evidence claim, a weight-of-the-evidence claim requires an assessment of the credibility of the evidence presented at trial. *Tibbs v. Florida*, 457 U.S. 31, 37-38 (1982).  "The credibility of the witnesses and the weight of the evidence is the exclusive province of the jury." *Herbert v. Rogers*, 890 F.3d 213, 225 (5th Cir. 2018).  To the extent that Morris is challenging the weight of the evidence, he fails to state a cognizable claim for habeas relief, and relief should be denied.

In *Jackson v. Virginia*, 443 U.S. 307 (1979), the United States Supreme Court held that insufficiency of the evidence can support a claim for habeas relief only if the evidence, when viewed in the light most favorable to the State, is such that no "rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319; *see also Santellan v. Cockrell*, 271 F.3d 190, 193 (5th Cir. 2001).  The evidence need not exclude every reasonable hypothesis of innocence or be completely inconsistent with every conclusion except guilt so long as a reasonable trier of fact could find that the evidence established guilt beyond a reasonable doubt. *United States v. Stevenson*, 126 F.3d 662, 664 (5th Cir. 1997).  Additionally, where a state appellate court has reviewed the sufficiency of the evidence, the state court's determination is entitled to great deference. *See Callins v. Collins*, 998 F.2d 269, 276 (5th Cir. 1993) (citing *Parker v. Procunier*, 763 F.2d 665, 666 (5th Cir. 1985)). "[A] federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court [but, instead,] may do

so only if the state court decision was objectively unreasonable." *Coleman v. Johnson*, 566 U.S.

650, 651 (2012).

> As summarized by the Mississippi Court of Appeals:

> King testified that she saw Morris walk up to her house earlier in the evening to
> speak to Torres, that she saw him drive away and later return, that she saw him
> argue with and shoot Torres, and that she saw him walk back toward her house and
> shoot at her house. She positively identified Morris as the shooter, and she testified
> that although it was dark, a nearby streetlight allowed her to see Morris.

*Morris*, 303 So. 3d at 16. The appeals court found that "King's testimony…was sufficient to

support convictions on all three charges." *Id*. The Mississippi Supreme Court rejected Morris's

claims as meritless. ([6-3]).

While there was evidence that the victim identified a "Bo" as the shooter, King testified

that she saw Morris argue with and shoot Torres. Medical testimony at trial affirmed that Torres

died from complications of the gunshot wound. ([7-4] at 93-97; [7-5] at 46-47). Additionally,

Morris's counsel questioned King during cross examination about her memory and knowledge of

guns as well her ability to see that night in the darkness. ([7-15] at 28-29). King testified that

Gates did not have the wound on his back from the aggravated assault conviction when he went

to sleep, and there are photographs of a bullet hole going through the wall right above the bed

where Gates was sleeping when the shooting occurred as well as photographs of the wound. ([7-

5] at 89-95, 112-17; [7-7] at 39, 51).

The state court was not objectively unreasonable in finding there was sufficient evidence

presented to support all three convictions. In fact, the evidence that Morris claims is insufficient,

merely conflicts with other evidence that was also presented at trial. Conflicts in the evidence

were for the jury to resolve, and this Court must "respect the ability of the fact-finder to evaluate

the credibility of the witnesses." *Knox v. Butler*, 884 F.2d 849, 851 (5th Cir. 1989).

The jury heard all of this evidence, including the parts that conflicted, and ultimately found Morris guilty on all three counts.  Morris is not entitled to habeas relief on this ground.

**Ground Three: Trial Judge erred by denying circumstantial evidence instruction.**

Morris argues that the trial judge erred by denying a circumstantial evidence instruction. The Mississippi Court of Appeals reviewed this claim but found that the instruction was not proper because "King's eyewitness testimony was direct evidence." *Morris*, 303 So.3d at 18.

Circumstantial evidence is "evidence which, without going directly to prove the existence of a fact, gives rise to a logical inference that such fact does exist." *Id*. (quoting *Keys v. State*, 478 So. 2d 266, 268 (Miss.1985)). At the time that Morris was tried, "if there [was] no confession or eyewitness testimony to the gravamen of the offense charged, the defendant [was] entitled to an instruction requiring the jury to exclude every other reasonable hypothesis other than that of guilt before a conviction [could] be had." *See Kennedy v. State,* 309 So. 3d 30, 36 (Miss. Ct. App. 2020)(citing *Burleson v. State,* 166 So.3d 499, 509 (Miss. 2015).[2]

However, in Morris's trial, there was direct evidence in the form of King's eyewitness testimony to prove the charged offenses. *See Ladner v. State*, 584 So.2d 743, 750 (Miss.1991) ("A circumstantial evidence instruction must be given only when the prosecution can produce neither an eyewitness nor a confession/statement by the defendant.").[3] While Morris attempts to classify King's testimony as "circumstantial," he identifies only alleged insufficiencies with the

---

[2] In *Nevels v. State*, 325 So.3d 627 (Miss. 2021), the Mississippi Supreme Court overruled this line of cases. Now, no special instruction is required for cases that rely on purely circumstantial evidence.

[3] "Direct evidence is the testimony of a person who asserts or claims to have actual knowledge of a fact, such as an eyewitness. Circumstantial evidence is proof of a chain of facts and circumstances indicating the existence of a fact." 1A Fed. Jury Prac. & Instr. § 12:04 (6th ed.).

credibility of the witness. The credibility of witnesses is "generally beyond scope of [federal habeas] review." *Schlup v. Delo*, 513 U.S. 298, 330 (1995). Because there was direct evidence to support the charges, a circumstantial evidence instruction was not warranted under Mississippi law.

Additionally, there is no constitutional right to a circumstantial evidence instruction. For example, the Fifth Circuit's own pattern jury instructions explain that "[t]he law makes no distinction between direct and circumstantial evidence, but simply requires that you find the facts from a preponderance of all the evidence, both direct and circumstantial." *See* Fifth Circuit Pattern Jury Instructions Criminal § 3.3 (2020); *United States v. Whitfield*, 590 F.3d 325, 354 (5th Cir. 2009) (endorsing this circuit's pattern jury instructions as a correct statement of the law).

Likewise, other courts have held that a circumstantial evidence instruction is not required by federal law or by the Constitution. *See Pea v. Cain*, 2017 WL 1197872, at *11 (M.D. La. Feb. 28, 2017); *Griffin v. New York State Dep't of Corrections*, 2007 WL 1296203, at *2 (S.D.N.Y. May 2, 2007) ("as a matter of federal constitutional law, circumstantial evidence is no different than direct evidence; so long as the jury is satisfied of guilt beyond a reasonable doubt, the type of evidence that convinces jurors is immaterial."); *Martinez v. Reynolds*, 888 F.Supp. 459, 262 (E.D.N. Y 1995) ("[t]here is no federal constitutional right to a circumstantial evidence instruction."). Morris possesses no federal constitutional right to a circumstantial evidence instruction, and habeas relief on this ground should be denied.

**Ground Four: Cumulative effect of errors deprived Morris of fair trial**

Morris next argues that the cumulative effect of errors deprived him of his right to a fair trial and warrants reversal of the state court's decision. Specifically, Morris claims that the

prosecution failed to produce the victim's medical records in advance of the trial and failed to produce a resume for its expert witness. Morris also claims that there were issues with the trial transcript being incomplete, and that a jury instruction proposed by his counsel should have been presented to the jury. The Mississippi Court of Appeals reviewed these claims and them without merit. *See Morris*, 303 So.3d at 16-22.

Cumulative error may be an independent basis for federal habeas corpus relief, but only where "(1) the individual errors involved matters of constitutional dimensions rather than mere violations of state law; (2) the errors were not procedurally defaulted for habeas purposes; and (3) the errors 'so infected the entire trial that the resulting conviction violates due process.' " *Westley v. Johnson*, 83 F.3d 714, 726 (5th Cir. 1996) (citing *Derden v. McNeel*, 978 F.2d 1453, 1454 (5th Cir. 1992)). Neither meritless claims nor claims that are not prejudicial can be cumulated, regardless of the total number of such errors raised. *Derden*, 978 F.2d at 1461.

Each of the errors alleged by Morris will be addressed in turn.

a) *The State's discovery violations*

Morris claims that he is entitled to habeas relief because the prosecution failed to produce a witness list prior to trial and did not produce a resume for its expert witness Dr. Dru Denison. The Supreme Court has held that "there is no general constitutional right to discovery in a criminal case." *See Weatherford v. Bursey,* 429 U.S. 545, 559 (1977). Additionally, although the Due Process Clause confers upon defendants a right to be informed about the existence of exculpatory evidence, it does not require the prosecution to "reveal before trial the names of all witnesses who will testify unfavorably." *Id*. at 559.

These allegations, at most, implicate state law discovery violations, and "it is not the province of a federal habeas court to reexamine state-court determinations on state-law

questions." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). Morris also provides no support that these discovery violations "so infused the trial with unfairness as to deny due process of law." *Lisenba v. California*, 314 U.S. 219, 228 (1941).

Dr. Denison was offered as an expert witness for the prosecution as the general surgeon who performed the amputation of Torres's leg. ([7-4] at 58). The trial court offered Morris an opportunity to voir dire the witness regarding his qualifications as an expert in general surgery. ([7-4] at 59). Defense counsel refused to question him because she did not have a copy of his resume. ([7-4] at 60). However, prior to being offered as an expert witness, Dr. Denison testified that he had been to medical school, is licensed by the state of Mississippi to practice medicine, and practices general surgery. ([7-4] at 56-57). Dr. Denison testified that he made every effort to try to save Torres's life but that he "ultimately…died of complications resulting from being shot in the leg." ([7-4] at 91). Morris is not entitled to habeas relief on this ground.

b) *The trial transcript*

Morris argues that the trial transcript is incomplete and that he was denied a fair appeal because he did not have a complete trial transcript. ([7-15] at 19). "[C]laims based on incomplete transcripts must show that the absence of such a transcript prejudiced [the defendant's] appeal." *Higginbotham v. Louisiana*, 817 F.3d 217, 222 (5th Cir. 2016) (quotation marks and citation omitted). However, there is no merit to Morris's claim that the trial transcript was incomplete.

The Mississippi Court of Appeals thoroughly addressed this claim in its written opinion and previously remanded the case to the circuit court for a hearing to determine whether the transcript needed to be corrected. *See Morris*, 303 So.3d at 20. At the hearing, the court reporter testified that the transcript was accurate, and the circuit judge listened to the relevant portions of the recording and did not hear the testimony that Morris alleged was missing. *Id.* at 21. The

appeals court found "no credible evidence of any omission in the transcript" to support Morris's claim. Morris is not entitled to habeas relief on this ground.

    *c) Jury instructions*

Next Morris argues that jury instruction D-8, should have been allowed by the trial court, and that he was therefore denied "his basic fundamental right of fairness and ma[de] cross exam[ination] as guaranteed by the Constitution impossible." ([7-15] at 21). Proposed jury instruction D-8 stated:

> The Court hereby instructs the jury that the testimony of a law enforcement officer should be considered by you just as any other evidence in this case. In evaluating his or her credibility, you should use the same guidelines which you apply to the testimony of any witness. In no event should you give greater or lesser credence to the testimony of any witness nearly because he or she is a law enforcement officer.

([7-1] at 123). The trial court found that the instruction improperly "attempt[s] to single out law enforcement officers" and that jury instruction C-1[4] "reference[s] how the jury is to determine the weight and credibility it assigns to each witness." ([7-5] at 150). The trial court then refused the instruction. ([7-5] at 150). The Mississippi Court of Appeals reviewed this claim and found that "jury instructions should not comment on the weight of the evidence" and determined that the trial court properly refused the instruction. *Morris*, 303 So.3d at 22.

Improper jury instructions in state criminal trials do not generally form the basis for federal habeas corpus relief. *See Estelle*, 502 U.S. at 71–72; *Galvan v. Cockrell*, 293 F.3d 760, 764 (5th Cir. 2002). The fact that a jury instruction was incorrect under state law does not entitle a petitioner to federal habeas corpus relief. *Gilmore v. Taylor*, 508 U.S. 333, 342 (1993). The

---

[4] Jury Instruction C-1 states in part: "As the sole judges of the facts in this case, your exclusive province is to determine what weight and what credibility will be assigned the testimony and supporting evidence of each witness in this case. You are required and expected to use your good common sense and sound honest judgment in considering and weighing the testimony of each witness who has testified in this case." ([7-1] at 109).

relevant inquiry is whether the failure to give an instruction "so infected the entire trial that the resulting conviction violates due process." *Cupp v. Naughten*, 414 U.S. 141, 147 (1973).

Morris has not shown that the refusal of jury instruction D-8 was improper, let alone that the failure to give the instruction so infected the trial that it violated his right to due process. The Mississippi Supreme Court has "soundly and repeatedly" held that jury instructions such as D-8 that single out law enforcement officers are properly refused when a general instruction such as C-1 is given. *See Howell v. State*, 860 So.2d 704, 745 (Miss. 2003); *Stewart v. State,* 355 So.2d 94, 96 (Miss.1978); *Washington v. State,* 341 So.2d 663, 664 (Miss. 1977). Morris is not entitled to habeas relief on this ground.

**Grounds Five and Six**

Morris claims in Ground Five that he was denied his right to a speedy trial and in Ground Six that the trial court failed to properly instruct the jury by offering jury instructions. However, as discussed *supra* pp. 7-9, these claims are procedurally barred because Morris did not raise and adequately brief the issues on direct appeal.

**Ground Seven: Ineffective assistance of trial counsel.**

After the trial and during sentencing, Morris specifically thanked his attorneys "for their great job representing [him]." ([7-6] at 55). Morris now argues that his trial counsel was ineffective and identifies fifteen alleged errors.[5] The Mississippi Supreme Court reviewed Morris's ineffective assistance of counsel claims in his motion for post-conviction relief, but denied them because "Morris fail[ed] to satisfactorily establish the requisite prongs of deficient performance and prejudice provided in *Strickland v. Washington*, 466 U.S. 668 (1984)." ([6-3]).

---

[5] It is important to note that Morris had at least three different attorneys between his arrest and trial, and his allegations do not differentiate between them. ([7-1] at 3-4, 26, 37, 81-82, 84, 85; [7-15] at 9, 22).

17

To establish ineffective assistance of counsel, a defendant must demonstrate that his trial counsel's performance fell below an objective standard of reasonableness and that this deficient performance prejudiced his defense. *Strickland*, 466 U.S. at 690-91. Failure to establish either prong defeats the claim. *Green v. Johnson*, 160 F.3d 1029, 1035 (5th Cir. 1998). A court must presume that "counsel's conduct [fell] within the wide range of reasonable professional assistance," and a defendant is required to overcome that presumption. *Strickland*, 466 U.S. at 689. To demonstrate prejudice, "the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694.

"Surmounting *Strickland's* high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010). "An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the *Strickland* standard must be applied with scrupulous care, lest intrusive post-trial inquiry threaten the integrity of the very adversary process the right to counsel is meant to serve." *Harrington v. Richter*, 562 U.S. 86, 105 (2011) (internal quotations and citation omitted).

    *a)   Failure to cross-examine State's expert Dr. Dru Denison*

Morris alleges that his trial counsel failed to properly cross-examine Dr. Denison regarding his qualifications to testify as an expert and to explore whether the murder victim died by "medical malpractice". ([7-15] at 17). However, while counsel for Morris did not initially question Dr. Denison on whether he was qualified to testify as an expert, counsel attempted to impeach Dr. Denison by pointing out that he was not a forensic pathologist or medical examiner. ([7-4] at 92-93). Additionally, counsel for Morris asked Dr. Denison about other potential causes of death for the victim, including the cocaine in the victim's system when he was admitted to the

hospital, the effects of cocaine in combination with the drugs used for his medical treatment, and potential surgery complications for those with circulatory system issues[6] as were identified in the victim's medical records. ([7-4] at 92-96)

Morris has not shown that counsel's performance was deficient on this ground or that the state appellate court unreasonably applied the *Strickland* standard. Accordingly, he is not entitled to habeas relief on this claim.

*b)   Failure to impeach King's identification of Morris as the shooter*

Morris argues that his trial counsel failed to "cross-examine aggressively [] King's identification of Morris as the shooter and show how the testimony of Gates, who was also present, contradicted it." ([7-15] at 28-29). Morris also alleges that trial counsel failed to question King about the discrepancies in the testimony about the type of gun the shooter had, whether King "hit the ground or porch or deck" and whether she would have been able to see his tattoo or properly identify him due to darkness. ([7-15] at 28-29).

A review of the record shows that trial counsel attempted to impeach King during cross examination by raising these very issues. Trial counsel questioned King about the discrepancies regarding the kind of gun she identified versus the kind identified by Gates. ([7-5] at 122-24). Counsel asked King about the inconsistencies between her original report to law enforcement that the shooter's vehicle was a silver Jeep and her testimony at trial that it was dark-colored truck. ([7-5] at 119-20). Trial counsel also questioned King about a tree that may have obstructed her view, the darkness of that night, and the distance that she was away from the shooting when

---

[6] The medical records stated that victim exhibited hypotension, or low blood pressure. Upon redirect, Dr. Denison clarified that the hypotension was caused by "[a]cute blood loss" from "[b]eing shot." ([7-4] at 96-97).

it occurred. ([7-5] at 123-25). Trial counsel also attempted to impeach King's testimony about her location at the time of the shooting as she initially reported that she "hit the ground" after the first shot was fired, but at trial she testified that she "hit the porch." ([7-5] at 123-25).

There is no merit to Morris's claim on this ground as trial counsel pursued these lines of questioning. Habeas relief should be denied.

    *c)*  *Failure to object to the "offending" jury instructions*

As previously discussed, the Mississippi Supreme Court found that Morris had waived his challenge to jury instructions C-7, C-9, C-10, C-11, and C-13 because he raised them for first time on post-conviction review. ([6-3]). In his Petition [1], Morris claims that "[t]he instruction on the elements of aggravated assault on Wilson Gates were confusing, internally contradictory, and allowed the jury to convict without finding each element." ([1] at 3). Morris did not support this claim with any legal citations or facts, leaving the Court to guess at the meaning behind this claim.

Challenges to jury instructions may not form a basis for federal habeas corpus relief unless a petitioner proves that the improper instruction rose to the level of a constitutional violation. *Gilmore v. Taylor,* 113 S.Ct. 2112, 2118-19, 124 L.Ed.2d 306, 318-322 (1993). In his motion for post-conviction relief, Morris argues that the jury instruction for aggravated assault C-13 was "confusing" and "that Gates was not seriously injured" and that "he was not shot purposely nor intentionally." ([7-15] at 16). However, jury instruction C-13 accurately states the law on the elements of aggravated assault in Mississippi Code Annotated § 97-3-7(2)(1), which is the statute under which Morris was indicted. ([7-1] at 15, 121).

The relevant portion of Mississippi Code Ann. § 97-3-7(2)(a) states:

A person is guilty of aggravated assault if he or she (i) attempts to cause serious bodily injury to another, or causes such injury purposely, knowingly or recklessly

> under circumstances manifesting extreme indifference to the value of human life;
> (ii) attempts to cause or purposely or knowingly causes bodily injury to another
> with a deadly weapon or other means likely to produce death or serious bodily
> harm[.]

Jury Instruction C-13 states that the jury should find Morris guilty if they beyond a reasonable

doubt that Morris did

> willfully, unlawfully, feloniously and recklessly under circumstances manifesting
> extreme indifference to the value of human life cause serious bodily injury to
> Wilson Gates by shooting him with a firearm, or that said defendant caused bodily
> injury to Wilson Gates purposely or knowingly with a deadly weapon or other
> means likely to produce death or serious bodily harm, by shooting him…

 ([7-1] at 121). The jury instruction mirrored the aggravated assault statute, and the testimony at

trial supported the state's position that Morris shot a deadly weapon at a house where King was

on the porch. ([7-1] at 121). More importantly, Morris has not established or attempted to

establish that his trial attorney's failure to object to the jury instruction fell below the *Strickland*

standard or that the state appellate court unreasonably applied *Strickland*. Morris is not entitled

to habeas relief on this ground.

> d) *Failure to object to the State's closing argument that commented on Morris's right to*
>    *silence*

Morris claims that the State during closing arguments commented on his right to silence

by stating "if there was impeachable evidence you would have heard it" and that his attorney

should have objected to those statements. ([7-15] at 18). However, Morris takes the prosecution's

claims out of context. Importantly, the trial court instructed the jurors that they "must not

consider the fact that [Morris] did not testify as evidence against him, and no inference of any

kind may be drawn from the fact that [Morris] did not testify in this case." ([7-1] at 114).

Morris also argues that during closing arguments, the State "invoked the Judge as a

higher authority, clothing the judge's instructions with primacy in jury deliberations." ([7-15] at

18). After reviewing the record, it is not clear what claim Morris is attempting to make with this statement. The prosecutor went through the testimony that had been presented in the case and argued that the state had met its burden of proof for all three crimes. Morris has not clearly articulated or established a claim for habeas relief on this ground.

    *e)   Failure to have jury instructed on manslaughter*

Next Morris argues that his trial counsel was ineffective for failing to have the jury instructed on manslaughter. Morris claims that since the indictment alleged manslaughter, the jury should have been instructed for manslaughter, and that the evidence showed that the shooter was in "a heat of passion." ([7-15] at 19). The Mississippi Supreme Court denied relief on this ground. ([6-3]).

In Mississippi, the murder statute states that an indictment for murder "shall serve as notice to the defendant that the indictment may include any and all lesser included offenses thereof, including, but not limited to, manslaughter." Miss. Code. Ann. §97-37 29(3). And just like the statute, the indictment references manslaughter as the "lesser crime" of murder. ([7-1] at 13). Additionally, the Supreme Court of Mississippi has made clear that "[t]here must be an evidentiary basis in the record to support a lesser-included-offense instruction." *Batiste v. State*, 121 So. 3d 808, 844 (Miss. 2013). No such evidentiary basis exists here.

Under Mississippi law, manslaughter is defined as (1) the killing of a human being, (2) without malice, (3) in the heat of passion, (4) without authority of law, (5) not in self-defense, and (6) by use of a dangerous weapon. Miss. Code Ann. § 97-3-35. The Mississippi Court of Appeals has explained that "when a defendant arms himself prior to an encounter with the victim and in preparation for an encounter with the victim, a heat-of-passion defense will not be supported." *Blanden v. State*, 276 So. 3d 1204, 1208 (Miss. Ct. App. 2018). "Manslaughter must

be in the heat of passion, i.e. the result of immediate and reasonable provocation, by words or acts of one at the time." *McCune v. State*, 989 So.2d 310, 319 (Miss. 2008).

King testified that Morris and Torres were arguing. She stated that Morris then <u>left her house</u>, circled around the block a few times, parked by the victim's house a few doors down, got out of his car, and yelled for the victim to come down to meet him. ([7-5] at 107-08). King stated that the victim was not threatening Morris and that he did not have a weapon on him. ([7-5] at 110-11). When the victim ran away from Morris, King testified that Morris "walked over [to him] and shot him a couple more times." ([7-5] at 112).

Because the testimony at trial showed that Morris left the victim after arguing with him and came back with a gun, Morris was not entitled to a manslaughter instruction. Moreover, in a non-capital case, the failure to give a lesser-included instruction does not raise a federal constitutional issue. *Valles v. Lynaugh,* 835 F.2d 126 (5th Cir.1988); *Creel v. Johnson,* 162 F.3d 385, 390 (5th Cir.1998). "Absent a violation of the Constitution, [the federal court] defer[s] to the state court interpretation of its law for whether a lesser-included-offense instruction is warranted." *Creel,* 162 F.2d at 391.

Morris has not shown that his counsel was deficient for failing to request a manslaughter jury instruction nor has he shown that counsel's efforts fell below the *Strickland* standard or that the state appellate court unreasonably applied that standard. Habeas relief on this ground should be denied.

   f)  *Failure to request a continuance following the State's late production of the medical records and the autopsy photos*

Morris claims that trial counsel was ineffective for failing to request a continuance after the state produced medical records and autopsy photos on the day of trial. ([7-15] at 19). Morris argues that if trial counsel had additional time, she "could have pointed out the mixture of other

powerful drugs" used while the victim was in the hospital and could have found information "to

form a basis for contending that an earlier amputation would have prevented [the victim's]

death." ([7-15] at 19).

The record shows that trial counsel pursued these theories during cross-examination of

the victim's treating physician, Dr. Denison, at trial. When the prosecution attempted to

introduce autopsy photos to refresh Dr. Denison's memory, trial counsel for Morris objected

stating that she had never seen the photos. ([7-4] at 64). The court then took a ten-minute recess

so that Morris's trial counsel had "an opportunity to see whatever these pictures may be…so she

can review them before we go forward." ([7-4] at 65). When the court reconvened, trial counsel

for Morris confirmed that she "had an opportunity to look at the photos." ([7-4] at 65).

When the prosecution requested to have the photographs admitted into evidence, trial

counsel for Morris objected on the basis that they had not been produced previously and asked

that Dr. Denison's testimony related to the photographs be stricken. ([7-4] at 69). She objected to

the photos being admitted stating:

> I'm asking that his testimony be stricken as well. The reason it is so important in
> this case is because it's just not a situation where somebody was shot and died right
> then. There is an issue of whether there was superseding events that occurred. This
> man was admitted into the hospital, became conscious, was on the phone, died a
> number -- a week or so later, something like that. And there was some other issues
> in references to the cause of death. And I think it's very important for all of those
> reasons that this information have been tendered in a timely manner, so that
> thorough and proper examination into those issues could be made for a fair and
> impartial trial and to be able to examine the issue at hand.

([7-4] at 70-71). After considering her objection, the trial court chose to let the jury go for the

day so that counsel for Morris could review the records that had been belatedly produced. ([7-4]

at 76-77).  The next morning, in response to the court asking counsel whether she had an

opportunity to review the medical records and photographs, counsel stated that she had. ([7-4] at

24

79). She also moved to exclude Dr. Denison's testimony related to the cause of death of the victim. ([7-4] at 81-82). However, the judge denied her motion and stated that because Dr. Denison "is the general surgeon, that he can, certainly, give his opinion as to the cause of death." ([7-4] at 84-85).

Counsel appears to have vigorously defended Morris. He has not shown that trial counsel's representation fell below an objective standard of reasonableness to establish even the first prong of *Strickland* or that the state appellate court unreasonably applied the *Strickland* standard. Habeas relief on this ground should be denied.

  g) *Failure to obtain discovery in advance of trial*

Morris claims that his trial counsel was ineffective for failing to obtain the victim's medical records and autopsy report in advance of trial. ([7-15] at 19-20, 29). However, the trial transcript makes clear that trial counsel asked for discovery from the State numerous times and that the State incorrectly represented to her that she had everything. The prosecution even admitted this to the court stating, "I thought she had everything we had…." ([7-4] at 64). Once it became apparent that Morris's trial counsel did not have all of the documents that should have been produced during discovery, trial counsel launched her objection stating:

> I think I'm just obligated to make my objection on the record, because I have a concern as to the level of preparation that's needed in this specific case because of the facts, the delayed death, and the issue of whether there was some superseding cause. All of it becomes very relevant for that reason and was part of the reason why I kept asking about it.

([7-4] at 74-75). The court decided to recess until the next day so that she had an opportunity to review the documents. ([7-4] at 75-79). The next morning, trial counsel stated that had an opportunity to review the victim's medical records.

Trial counsel then utilized the information she learned from the medical records to effectively cross-examine Dr. Denison on alleged discrepancies in the records, such as the impact of cocaine in his system, his decision to perform surgery on someone with blood pressure problems, and the possibility of the cause of death being from his treatment at the hospital. ([7-4] at 241-45). Morris has not shown that his trial counsel was ineffective, that counsel's representation fell below an objective standard of reasonableness under *Strickland*, or that the state appellate court unreasonably applied *Strickland*. Habeas relief on this claim should be denied.

h)  *Meeting with Morris only once*

Morris argues that trial counsel was ineffective for only meeting with him once prior to trial, but Morris does not explain what visiting him another time would have accomplished. The Fifth Circuit has held that "[length] of time spent in consultation, without more, does not establish that counsel was ineffective." *Easter v. Estelle*, 609 F.2d 756 (5th Cir. 1980). Morris has not shown how counsel was deficient or how he was prejudiced on this ground. Habeas relief should be denied.

i)  *Making the decision for Morris not to testify*

Morris claims that his counsel made the decision that he should not testify at trial and that this amounted to ineffective assistance of counsel. ([7-15] at 9). However, the record clearly contradicts Morris's argument.

After the State rested, the court asked trial counsel if she had spoken with Morris about his constitutional right to testify. The trial court gave them an opportunity to confer, and then placed Morris under oath asking:

26

| | | |
|---|---|---|
| COURT: | Sir, do you understand that you may choose to testify in your own defense in this matter? |
| MORRIS: | Yes, I do. |
| COURT: | All right. Do you understand that you may choose to remain silent and not testify? |
| MORRIS: | Yes, I do. |
| COURT: | Do you understand that this is your choice and your choice alone and not a choice of your attorneys? |
| MORRIS: | Yes, I do. |
| COURT: | Have you consulted with your attorneys as to whether or not you should testify or not testify in this matter? |
| MORRIS: | Yes, I have, Your Honor. |
| COURT: | Okay. Do you understand that your attorney cannot prevent you from testifying if you want to do so and also you cannot be forced to testify? Do you understand that? |
| MORRIS: | Yes, Your Honor. |

([7-5] at 136). Morris then stated that he had not decided whether to testify at that time, but he was told to "notify the [c]ourt immediately" if he decided he wanted to testify. ([7-5] at 138). The trial court then concluded:

> [A]fter considering the statements of the Defendant, [the court] finds that he has knowingly and intelligently made a decision at this point not to testify in this case. He understands that this decision is his alone and not that of his counsel. He further understands that if he decides to testify, he will be cross-examined and he may be impeached by prior convictions, if the Court determines they're relevant…. Again, the Court finds that he has made an informed decision and he's doing it freely and voluntarily. And the Court finds that in the event he changes his mind, he needs to notify the Court immediately, as long as we're still going in this case and he hasn't rested yet. But he understands that that's his decision and his decision alone to make and not that of his attorneys.

([7-5] at 138). The defense then rested, and the court adjourned for the day. The next morning, the trial court again asked Morris under oath:

> COURT:    And, Mr. Morris, you are aware I went through all of those constitutional rights with you yesterday afternoon, and it's your opportunity to testify if you want to or you can remain silent. As we are here today, it is still your position that you do not want to testify; is that correct?
>
> MORRIS:    Yes, sir, Your Honor.

([7-5] at 144). The record shows that Morris stated multiple times, under oath, that he did not wish to testify in his defense, and he specifically acknowledged that counsel could not and did not make that decision for him. Accordingly, Morris has not shown that he is entitled to relief on this ground. *See Murray v. Vannoy*, 806 F. Appx. 341 (5th Cir. 2020) (*citing Strickland*, 466 U.S. at 687) ("the record is devoid of any evidence to corroborate his conclusory assertion that he expressed his desire to testify but was prevented from doing so by his attorney, and therefore [petitioner] had not demonstrated any deficient performance by counsel."). Habeas relief on this ground should be denied.

> j)  *Failure to inquire why the State did not call the first detective on the scene to testify*

Morris next argues that his counsel was ineffective for failing to inquire why the State did not call the first officer who arrived on the scene to testify at his trial. ([7-15] at 9). "To establish that an attorney was ineffective for failure to investigate, a petitioner must allege with specificity what the investigation would have revealed and how it would have changed the outcome of the trial." *Miller v. Dretke*, 420 F.3d 356, 361 (5th Cir. 2005). Morris has not shown, or even alleged, what this other officer would have testified to or how it would have changed the outcome of his case. Accordingly, Morris cannot establish that his trial counsel was ineffective for failing to further investigate these witnesses.

k) *Failure to visit the crime scene*

Morris claims that his counsel was ineffective because she did not visit the crime scene. ([7-15] at 9). "An attorney has a duty to independently investigate the charges against his client." *Bower v. Quarterman*, 497 F.3d 459, 467 (5th Cir. 2007) (citation omitted).  But counsel "is not required to pursue every path until it bears fruit or until all conceivable hope withers." *Washington v. Watkins*, 655 F.2d 1346, 1356 (5th Cir. 1981) (citation omitted).

Morris does not articulate what trial counsel visiting the crime scene would have revealed and does not even allege that this visit would have changed the outcome of his trial. "[C]onclusory allegations of ineffective assistance of counsel do not raise a constitutional issue in a federal habeas proceeding." *Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000). Habeas relief on this ground should be denied.

l) *"Poor" opening statement*

Morris argues that his counsel was ineffective for making a "less than poor" opening statement. ([7-15] at 28). However, the record belies Morris's claim. Trial counsel highlighted the pitfalls in the prosecution's case emphasizing that there are "no fingerprints, no DNA, incomplete autopsy" and that when a witness's "testimony changes from time to time" that the jury should take that into account. ([7-4] at 42-43).

The Fifth Circuit has long held that the decision of whether to present an opening statement at all falls squarely within "the zone of trial strategy." *Gillard v. Scroggy*, 847 F.2d 1141, 1147 (5th Cir. 1988), *cert. denied*, 488 U.S. 1019, 109 S.Ct. 818, 102 L.Ed.2d 807 (1989); *Murray v. Maggio*, 736 F.2d 279, 283 (5th Cir. 1984); s*ee also Martinez v. Dretke*, 426 F. Supp. 2d 403, 468-69 (W.D. Tex. 2006) (where petitioner has alleged no specific facts showing how his attorney's failure to make an opening statement prejudiced him and where evidence was

"overwhelming," there was no "reasonable probability that, but for the failure of petitioner's trial counsel to make an opening statement ..., the outcome of the guilt-innocence phase of petitioner's trial would have been different."). Here, Morris offers nothing other than conclusory allegations and bald assertions about the adequacy of the opening statement, which are insufficient to support a petition for a writ of habeas corpus. *See Miller*, 200 F.3d at 282. Habeas relief on this claim should be denied.

### m) Failure to prepare for trial or conduct a personal investigation

Morris also claims that his trial counsel failed to adequately prepare for trial or conduct a personal investigation. ([7-15] at 28). However, "[t]o establish that an attorney was ineffective for failure to investigate, a petitioner must allege with specificity what the investigation would have revealed and how it would have changed the outcome of the trial." *Miller v. Dretke*, 420 F.3d 356, 361 (5th Cir. 2005). Morris does not even allege what additional preparation or investigation would have revealed. Habeas relief on this ground should be denied.

### n) Failure to offer the jury an alibi

Morris argues that his trial counsel was ineffective for failing to offer the jury an alibi. ([7-15] at 28). However, the record does not reflect that Morris had an alibi defense, nor does Morris now reveal what his alibi was. ([6] at 56). Conclusory allegations of ineffective assistance of counsel do not entitle Morris to habeas relief on this ground. *See Miller*, 200 F.3d at 282.

### o) Requesting "too many" continuances

Morris last argues that his trial counsel was ineffective for requesting "too many" continuances which, in turn, made his speedy trial claim "null to weak." ([7-15] at 29). Importantly, Morris has already argued that his counsel was ineffective for failing to request a

continuance after the state did not produce certain documents prior to trial. Now, he claims that counsel was ineffective for requesting too many continuances.

The record shows that multiple continuances were requested due to Morris's disagreements and skirmishes with counsel. At least one of Morris's prior attorneys had to withdraw after Morris filed bar complaints with the Mississippi Bar regarding his representation. ([7-1] at 81). Additionally, another attorney was allowed to withdraw "due to [Morris's] failure to assist in his defense and continued disagreement about how to proceed." ([7-1] at 69). This claim is meritless, and Morris is not entitled to habeas relief on this ground.

**Ground Eight: Ineffective assistance of appellate counsel**

The two-prong test of *Strickland* is likewise applied to appellate counsel. *See Henderson v. Quarterman*, 460 F.3d 654, 665 (5th Cir. 2006). The Mississippi Supreme Court reviewed Morris's ineffective assistance of appellate counsel claims in his motion for post-conviction relief, but denied them because "Morris fail[ed] to satisfactorily establish the requisite prongs of deficient performance and prejudice provided in *Strickland v. Washington*, 466 U.S. 668 (1984)." ([6-3]).

*a)  Failure to adequately argue Morris's speedy-trial claim*

Morris argues that his appellate counsel was ineffective for failing "to adequately present the issue of Speedy Trial…not even counting the days where a continuance was granted over Morris'[s] objection." ([7-15] at 8, 24). Morris claims that the inadequate briefing led to the Mississippi Court of Appeals denying his claim on direct appeal. The Mississippi Supreme Court denied his claim for relief. ([6-3]).

On direct appeal, the Mississippi Court of Appeals found that Morris's "one-paragraph argument" did "not even articulate the length of the relevant delay." *Morris*, 303 So. 3d at 22.

31

The appellate court found that his claim was waived for his "failure to make any meaningful argument in support of it." *Id*. However, in order for Morris to succeed with this claim, Morris has to show that had appellate counsel sufficiently briefed his speedy trial claim that he would have succeeded. *See Shelton v. King*, F.Supp.2d 288, 315-18 (S.D. Miss. 2008). Morris has not made that showing.

The record shows that Morris filed two unsuccessful *pro se* speedy-trial motions in the trial court. ([7-1] at 42-44, 50-57). In the first, Morris argued that he should be released and the charges against him should be dismissed because of the State's alleged speedy trial violation. ([7-1] at 42-44). In the second, Morris argued that the *Barker* factors "weigh heavily in [his] favor." ([7-1] at 50-57). The trial court reviewed Morris's motion to dismiss based on the Mississippi speedy trial statute Mississippi Code Ann. §99-17-1 and found that "there ha[d] been no violation of [Morris's] statutory right to a speedy trial." ([7-1] at 77).

The first *Barker* factor is the length of delay, and the Fifth Circuit has held that a delay of longer than one year triggers the *Barker* analysis. *See U.S. v. Frye*, 372 F.3d 729, 737 (5th Cir. 2004). Because the delay between Morris's arrest on September 11, 2013, and his trial on July 25, 2016, is a total of 1,049 days (more than one year), the delay prompts a full, four-step *Barker* analysis. ([6-8] at 41) ([6-9] at 19); *see U.S. v. Frye,* 372 F.3d 729, 737 (5th Cir.2004), *cert. denied,* 543 U.S. 1155 (2005) (referring to a delay "longer than our one-year guideline"); *Robinson v. Whitley,* 2 F.3d 562, 568 (5th Cir.1993), *cert. denied,* 510 U.S. 1167 (1994) (citing circuit law that "generally requires a delay of one year to trigger speedy trial analysis") (citation omitted).

As for the second factor — the reasons for the delay—"[a] deliberate and intentional delay by the prosecution for the purpose of hindering the defense or otherwise gaining a tactical

advantage is weighed heavily against the state." *Cowart v. Hargett,* 16 F .3d 642, 647 (5th Cir.1994), *cert. denied,* 513 U.S. 886 (1994). On the other hand, "[a]n unintentional and inadvertent delay ... is weighed much less heavily." *Id.* "A more neutral reason such as negligence or overcrowded courts should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant." *Barker,* 407 U.S. at 531. "Where the state advances valid reasons for the delay, or the delay is attributable to acts of the defendant, this factor is weighed in favor of the state." *Cowart,* 16 F.3d at 647 (citing *Barker*).

The trial court in reviewing Morris's speedy trial motions, analyzed the various delays between Morris's arrest on September 12, 2013, and a June 8, 2015, trial date. Morris waived arraignment and entered a not guilty plea on February 21, 2014, and his original trial date was set for March 31, 2014. The trial court found that between March 31, 2014, and October 13, 2014 (196 days) Morris waived his right to a speedy trial.[7]  ([7-1] at 76; 29-31). The trial court also found that Morris's counsel requested a continuance for good cause between October 13, 2014, and November 19, 2014 (36 days). On November 19, 2014, a continuance was granted until February 17, 2015 (88 days) so that Morris could continue on-going plea negotiations. ([7-1] at 76). On February 17, 2015, the court found that "through no fault of the State" the matter was continued until April 15, 2015 (59 days) while they awaited a written copy of the autopsy report. The April 15, 2015, trial date was then continued multiple times to June 8, 2015 (54 days) for good cause because defense counsel was having medical testing done. ([7-1] at 77). The trial

---

[7] On March 28, 2014, the court entered an Agreed Order Granting Continuance in which it noted that "Defendant has waived his right to a speedy trial…" ([7-1] at 29). Orders Resetting Cause entered on June 3, 2014 and August 11, 2014 also stated that "Defendant waives right to speedy trial." ([7-1] at 30-31). These Orders were signed by counsel for Morris, and should not be charged against the State.

court then concluded that "[o]f the 634 days…only 38 days must be assessed solely to the State." ([7-1] at 77).

Most of the delays in bringing Morris to trial were attributable to Morris. As previously mentioned, Morris's first two attorneys withdrew due to conflicts and an inability to communicate with him. ([7-1] at 32, 81, 85). Counsel for Morris requested many of the continuances, and Morris waived his right to a speedy trial on multiple occasions. ([7-1] at 29, 30, 37, 38, 39, 45, 78, 80, 84, 86-87, 90, 105). However, after the trial court's second order denying Morris's speedy trial claim, the State requested a continuance from May 31, 2016 to July 25, 2016 (56 days). The undersigned finds that vast majority of the delay was attributable to Morris. This factor weighs in favor of the State.

The third *Barker* factor is whether the petitioner effectively asserted his right to a speedy trial. Not every invocation of the right will suffice. "Defendants must appropriately assert their speedy-trial rights, as viewed in light of their other conduct." *Laws v. Stephens*, 536 Fed. App'x 409, 413 (5th Cir. 2013). The trial court found that there was "no evidence in the record to support [Morris's] claim" that he "verbally asserted his right to a speedy trial." ([7-1] at 73).  The record shows that on April 7, 2015, and April 28, 2015, Morris filed two *pro se* speedy-trial motions in the trial court. ([7-1] at 42-44, 50-57). The circuit court denied the motions on May 20, 2015, and the Supreme Court of Mississippi refused to hear them on interlocutory appeal. (7-1] at 68-77; 79). However, shortly after on September 28, 2015, counsel for Morris moved to withdraw because Morris had filed complaints about his counsel to the Mississippi Bar. ([7-1] at 81). New counsel then moved for a continuance because she was "retained recently and need[ed] sufficient time to prepare" and later agreed to multiple continuances. ([7-1] at 84; 87; 90). Much

of the additional delay was caused by Morris choosing to obtain paid counsel and for new counsel to get acquainted with the case. This factor weighs also weighs in favor of the State.

The fourth and final *Barker* factor is whether the Petitioner was prejudiced by the delay in trial. In *Barker*, the Supreme Court held that prejudice "should be assessed in the light of the interests of defendants which the speedy trial right was designed to protect." *Barker*, 407 U.S. at 532. The Court identified three of these interests: "(i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired." *Id*. The third factor is the "most serious" because "the inability of a defendant adequately to prepare his case skews the fairness of the entire system." *Id*. The defendant bears the burden to demonstrate actual prejudice unless some or all of the first three factors weigh heavily in the defendant's favor. *See U.S. v. Molina-Solorio*, 577 F.3d 300, 307 (5th Cir. 2009).

Because the first three factors do not weigh heavily in Morris's favor, he must show actual prejudice. *See U.S. v. Harris*, 566 F.3d 422, 433 (5th Cir. 2009) (finding that if the first three *Barker* factors do not weigh "heavily" in the petitioner's favor, there is no "presumption of prejudice" and he must demonstrate "actual prejudice"). Morris alleges that he was denied an opportunity "to provide substance for his children," lost out on opportunities for employment, experienced anxiety, and "[h]is ability to maintain a positive public appearance...diminished." ([7-1] at 54).

However, while "Barker recognized anxiety and concern of the accused as a type of cognizable harm that may result from a delayed trial, a defendant must present more than a 'minimal showing' of anxiety to sustain a speedy trial claim." *Russell v. Denmark*, 2023 WL 3529638 (5th Cir. 2023). Morris has not demonstrated more than a minimal showing of pretrial

anxiety, and he has made no showing that his ability to present a defense was impaired in any way by the delay in bringing him to trial. Morris has not made the particularized showing of prejudice, and the fourth *Barker* factor weighs in the State's favor.

Morris has not shown that he suffered an unconstitutional delay in proceeding to a speedy trial, and as a result, he fails to show deficient performance on behalf of his counsel for failing to raise the claim of violation of speedy trial or any resulting prejudice. The Mississippi Supreme Court's denial of relief on this claim was not contrary to or an unreasonable application of *Strickland*, and Morris is not entitled to relief.

**Ground Nine: *Brady* violation related to the victim's cellphone**

Next Morris argues that the State violated *Brady v. Maryland*, 373 U.S. 83 (1963), when it failed to disclose information from the victim's cellphone. According to Morris, after the shooting, "the victim made a brief recovery" and during that recovery he called Morris and told him that "[Morris] did <u>not</u> shoot him." ([7-15] at 30, 32). He argues that the victim's cellphone should have been sent to the crime lab and searched. The Supreme Court of Mississippi considered this claim in Morris's PCR Motion but rejected it as meritless. ([6-3]).

In *Brady,* the United States Supreme Court held that when a state suppresses evidence favorable to an accused that is material to guilt or to punishment, the state violates the defendant's right to due process. *Id.* To make a *Brady* claim, Morris must prove that:

> (1) the prosecution did not disclose evidence; (2) the evidence was favorable to the defense; and (3) the evidence was material. Evidence is material if there is a reasonable probability that the outcome of the trial would have been different had such evidence been revealed to the defense. The question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence.

*United States v. Valencia,* 600 F.3d 389, 418 (5th Cir.2010) (internal citations and quotations omitted). Additionally, in order to establish a violation, the defendant must show that his own failure to discover the evidence was not the result of a lack of due diligence on his part. *See Avila v. Quarterman,* 560 F.3d 299, 305 (5th Cir.2009).

Morris has failed to show that the prosecution did not disclose evidence that was favorable to the defense and that this evidence could not have been discovered with his own due diligence. Morris appears to be the only living person with any record or knowledge of this call, and he is the person who should have inquired into proof relating to it. Information regarding the alleged call with the victim could have been obtained from Morris's own cell phone. Additionally, Detective Powell testified at trial that because they did not suspect the victim of any criminal activity, they did not search his phone. ([7-5] at 85-87).

Morris has failed to show that the prosecution had this alleged evidence and did not disclose it. Accordingly, he has not shown that the state court's decision on this issue is contrary to or involves and unreasonable application of clearly established federal law, or that the decision was based on an unreasonable determination of the facts in light of the evidence. Habeas relief on this claim should be denied.

**Ground Ten: Morris should have been allowed to testify**

As previously discussed, the record is replete with evidence that Morris was provided at least two opportunities to testify on his behalf but that he chose not to do so. He is not entitled to habeas relief on this ground.

**Ground Eleven: Prosecutorial Misconduct for improper voir dire**

Morris claims that the prosecutor's remarks during voir dire were improper and "a clear attempt to prejudice the jury against the Defendant." ([7-15] at 35). Morris claims that "[b]y

asking the potential jury could they still convict if it's established that there was a lack of evidence…[that] this is an admission of a lack of evidence…." The Supreme Court of Mississippi reviewed this claim and found that it was without merit. ([6-3]).

The Fifth Circuit analyzes prosecutorial misconduct claims in two steps. *United States v. Ebron,* 683 F.3d 105, 140 (5th Cir. 2012). First, the court must evaluate whether the prosecutor made an improper remark. *United States v. Fields,* 483 F.3d 313, 358 (5th Cir. 2007). If so, then the court must determine whether the defendant suffered prejudice. *Id*. However, the prejudice step of the inquiry sets a high bar and "[i]mproper prosecutorial comments constitute reversible error only where the defendant's right to a fair trial is substantially affected." *United States v. Holmes,* 406 F.3d 337, 355–56 (5th Cir. 2005). "A criminal conviction should not be lightly overturned on the basis of a prosecutor's comments standing alone." *Trottie v. Stephens*, 720 F.3d 231, 253 (5th Cir. 2013). Rather, "the determinative question is whether the prosecutor's remarks cast serious doubt on the correctness of the jury's verdict." *Id*.

During voir dire, the prosecutor asked the potential jurors specific questions about the expected "proof in his case." ([7-3] at 122). Morris's counsel objected to that line of questioning and argued that she "believe[d] [the prosecutor] ha[d] gone really into the details of the case." ([7-3] at 123). The trial court overruled her objection. Trial counsel objected again a second time arguing that the prosecutor's questions were "so in depth that they [we]re becoming more prejudicial than probative." ([7-3] at 126-27). The trial court again overruled her objection but recognized counsel's concern acknowledging that "at some point it d[id] go [] into an opening part." ([7-3] at 126).

However, even assuming that the prosecutor's statements and questions were improper, Morris has not shown that "the prosecutor's remarks cast serious doubt on the correctness of the

jury's verdict." *Trottie*, 720 F.3d at 253. The case specific statements made by the prosecutor were later substantiated during trial by testimony and evidence presented.[8] And as discussed previously, there was sufficient evidence at trial to support the jury's verdicts for all three convictions. Accordingly, Morris has failed to show that the Mississippi Supreme Court's rejection of this claim was contrary to or an unreasonable application of clearly established federal law, and he is not entitled to federal habeas relief on this ground.

## RECOMMENDATION

For the reasons set forth above, the undersigned recommends that the Petition for Writ of Habeas Corpus [1] be DENIED.

## NOTICE OF RIGHT TO OBJECT

In accordance with the rules and 28 U.S.C. § 636(b)(1), any party within fourteen days after being served a copy of this recommendation, may serve and file written objections to the recommendations, with a copy to the district judge, the magistrate judge and the opposing party. The district judge at the time may accept, reject or modify in whole or part, the recommendations of the magistrate judge, or may receive further evidence or recommit the matter to this Court with instructions.  The parties are hereby notified that failure to file written objections to the proposed findings, conclusions, and recommendations contained within this report and recommendation within fourteen days after being served with a copy shall bar that party, except

---

[8] Examples of comments the prosecutor made during voir dire include, "Crystal King was on her porch in her neighborhood…and she saw some words between the Defendant and the victim, Manuel Torres…. Mr. Morris…got in a vehicle and left…went around the block a few times…Mr. Morris without apparent provocation…shot him." ([7-3] at 124-25). The prosecutor also told potential jurors, "you are going to hear that at first she was reluctant to talk to the police…." ([7-3] at 122). However, testimony at trial substantiated his comments. While Crystal King initially refused to talk to police, she testified that Morris and victim were arguing; ([7-5] at 108; 118); that Morris left and drove around the block a few times; ([7-5] at 108); and that Morris shot the victim. ([7-5] at 110).

upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions accepted by the district court to which the party has not objected. *Douglass v. United Servs. Auto. Ass'n,* 79 F.3d 1415, 1428-29 (5th Cir. 1996).

THIS the 31st day of July, 2023.

s/Michael T. Parker
UNITED STATES MAGISTRATE JUDGE